IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TYRONE HOLLOWAY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 -CV-3209 |
| | ) | |
| ROB GRIFFIN, et. al., | ) | |
| Defendants. | ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff, proceeding pro se and incarcerated at Graham Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. §1983 alleging a Fourteenth Amendment Equal Protection claim based on the denial of a prison job.[1]. The matter is before the Court for ruling on the Defendants' Motion for Summary Judgment. [18].

The dispositive motion was filed on May 20, 2015. [18]. The Court sent notice to the Plaintiff advising him the motion had been filed and admonishing Plaintiff that a failure to respond would result in the Court accepting the Defendants' statement of facts as true. [d/e 28].

1

The Plaintiff then filed a motion for an extension of time to file a response which was granted by the Court. [8], October 14, 2015 Text Order).  However, the November 6, 2015 deadline has come and gone and Plaintiff has filed nothing further.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists.  *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615

F.3d 877, 881 (7th Cir. 2010). At the summary judgment stage, the evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.*

FACTS

During the relevant time period, Plaintiff was incarcerated at Graham Correctional Center. Defendant Cecil Polley was the Warden at the facility, and Defendant Rob Griffin was a Lieutenant working as the Internal Affairs and Intelligence Supervisor. (Def. Und. Fact #1-3).

Plaintiff and Inmate RK were incarcerated in Housing Unit 20 on September 12, 2013. (Def. Und. Fact # 4). The Plaintiff is an African-American, and Inmate RK is Caucasian. During a routine shakedown of the unit, officers found a large amount of sandpaper in the common area. (Def. Und. Fact #5). Defendant Griffin placed both the Plaintiff and Inmate RK on Investigative Status while he conducted an investigation. (Def. Und. Fact # 6, 7). As a result, both inmates were terminated from their prison jobs. (Def. Und.

3

Fact # 10). Plaintiff had been working as a Unit Porter in Housing Unit 20, while Inmate RK was working as an Autobody Student. (Def. Und. Fact # 8, 9).

Defendant Griffin interviewed the Plaintiff and four other inmates. (Def. Und. Fact # 11). Some claimed Inmate RK sold the sandpaper to the Plaintiff, while others denied either inmate was involved with the incident. (Def. Und. Fact # 12, 13). Due to the conflicting reports, Defendant Griffin decided not to issue any disciplinary reports and released both inmates from Investigative Status on September 20, 2013. (Def. Und. Fact # 14, 15).

Placement Officer Vernon DeWitt says an inmate released from Investigative Status will not necessarily go back to the housing unit they came from. Instead, they will be placed wherever there is available room. (Def. Und. Fact # 16). Consequently, Plaintiff was moved to Housing Unit 18 and Inmate RK was moved to Housing Unit 22. (Def. Und. Fact # 17, 18).

The Housing Unit Porter job is selected by staff members. Correctional Officers request which inmates they want to be porters from the inmates living on the particular unit. (Def. Und. Fact # 19, 21). The Officers will contact the Placement Officer who will then

make the assignment. (Def. Und. Fact # 23).  Since the Plaintiff was no longer living in Housing Unit 20, he was no longer eligible to be a porter on that unit. (Def. Und. Fact # 20).

For other jobs at Graham Correctional Center, the inmate makes a request and a Placement Officer fills out a "Vote Sheet." (Def. Memo.,Pol. Aff., p. 1; Def. Und. Fact # 29). The Inmate's Counselor, Clinical Services Supervisor, Assignment Officer, a Psychologist, an Internal Affairs representative, and the Assistant Warden of Operations will then vote to either approve or deny the request. (Def. Memo.,Pol. Aff., p. 1; Def. Und. Fact # 30).  If there is a specific reason for denying the job request, it is written in the comments section of the Vote Sheet. (Def. Und. Fact # 40).

The Warden does not "vote," but does have final say in whether an inmate is approved for a job. (Def. Memo.,Pol. Aff., p. 1). Warden Polley says if the Internal Affairs representative or the Assistant Warden vote no, Warden Polley defers to their judgment and denies the job request. (Def. Und. Fact # 39).

In November of 2013, Plaintiff requested a job as a Healthcare Unit Attendant. Officer Billy Goodman filled out the vote sheet. (Def. Und. Fact #31).  Defendant Graham did not vote on the request.

(Def. Und. Fact # 32). Instead, Officer Duane Clinard voted as the Internal Affairs representative. (Def. Und. Fact # 33).

On November 26, 2013, the Plaintiff's request for the Healthcare Unit job was denied. (Def. Und. Fact # 28). The reason cited was "[d]oes not match criteria." (Def. Und. Fact # 36). The criteria for the job included "at least four years form projected out date, no staff assaults, no mental health issues, no active Security Threat Group ("STG," i.e. gang) affiliation, no major discipline in the past 2 years, no sexual offenses, no weapons violations, must be capable of understanding Healthcare Unit rules and job duties." (Def. Und. Fact # 37). At the time the Vote Sheet was considered, Plaintiff was listed with an active STG affiliation. (Def. Und. Fact # 38).

Defendant Warden Polley signed off on the denial of Plaintiff's job request noting staff members voted 4-2 against the request. (Def. Und. Fact # 42). Those voting against the job included the psychologist, security staff, and the Assistant Warden. (Def. Und. Fact # 42).

A student inmate who is placed on Investigative Status, but does not receive a disciplinary ticket, will return to school if there is room in the relevant class. (Def. Und. Fact # 24). Therefore, Inmate RK returned to his autobody class on September 21, 2013. (Def. Und. Fact # 25). Since autobody students receive training in painting, Inmate RK was assigned to a job as a Painter on October 9, 2013. (Def. Und. Fact #26, 27).

ANALYSIS

The Defendants argue Plaintiff cannot demonstrate a constitutional violation based on the failure to assign him to a prison job after his release from Investigative Status. "Racial discrimination in the administration of state prisons violates the Equal Protection Clause of the Fourteenth Amendment." *Bell v. Osafo*, 2010 WL 3283025, at *6 (C.D.Ill. Aug. 18, 2010) *citing Black v. Lane,* 824 F.2d 561, 562 (7th Cir.1987). "However, a person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bell,* 2010 WL 3283025, at *6 *citing Huebschen v. Department of Health and Social Services,* 716 F.2d 1167, 1171 (7th

Cir.1983). Specifically, Plaintiff must provide evidence that he "is a member of a protected class," that he was "similarly situated" to individuals who were not in the protected class, and he "was treated differently" from those individuals. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir.1993). "When there is no evidence of discriminatory conduct, summary judgment on an equal protection claim should be granted." *Bell,* 2010 WL 3283025, at *6 citing *Wilson v. Schomig,* 863 F.Supp. 789, 794 (N.D.Il.1994) (The district court granted the defendant's motion for summary judgment on an equal protection claim because there was no evidence of any racially discriminatory conduct by defendant when assigning an inmate to a prison job).

Although the Plaintiff, an African-American, was not able to find a job after his release from Investigative Status, Inmate RK, a Caucasian, did go back to his position as an Autobody Student and found a new job. However, the Defendants note the inmates were not similarly situated. For instance, there were different qualifications for the relevant jobs. A Housing Unit Porter could only be selected from inmates living on the unit, but this restriction did not apply to autobody students. In addition, the application

and selection process for an autobody student verses a porter were completely different.

More importantly, Defendants state the Plaintiff was not re-assigned to a job for legitimate, non-discriminatory reasons. For instance, both the Plaintiff and Inmate RK were moved to different units after their release from Investigative Status due to availabity. Since Plaintiff was no longer on Unit 20, he was not eligible for the same porter job. The Plaintiff also failed to meet the requirements for a job as a Healthcare Unit Attendant since he was still identified as an active gang member when he applied for the job.

Finally, the Plaintiff has not demonstrated the Defendants were involved in his allegations. A defendant must be "personally responsible for the deprivation of a constitutional right" in order to be liable under §1983. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir.2001) (quoting *Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir.2001). In this case, there is no evidence Defendant Griffen was involved in the decision to deny the Plaintiff a porter job or a job in the Healthcare Unit. In addition, there is no evidence Defendant Polley was involved in the decision to deny Plaintiff the porter job.

Based on the uncontroverted evidence before the Court, the Defendants' motion for summary judgment is granted.[18]

**IT IS ORDERED:**

1) Defendants' motion for summary judgment is granted pursuant to Fed. R.Civ. P. 56. [18]  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  This case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a

reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

ENTER:    February 9, 2016

FOR THE COURT:

s/ Sue E. Myerscough
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE